**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR03-4088-MWB |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE** |
| HOPE AREE PINKERTON, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Charges, Conviction, and Sentencing* . . . . . . . . . . . . . . . . . . . . . 2
    *B.  The Motion To Vacate Sentence* . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.  Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . . 6
        *1.  Relief on the merits of the claims* . . . . . . . . . . . . . . . . . . . . 6
        *2.  Entitlement to an evidentiary hearing* . . . . . . . . . . . . . . . . . 8
    *B.  Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . 9
        *1.  Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        *2.  The "ineffective assistance" at issue here* . . . . . . . . . . . . . . 12
            *a.  Failure to prepare Pinkerton for her guilty plea* . . . . . 12
            *b.  Conflict of interest* . . . . . . . . . . . . . . . . . . . . . . . . 14
    *C.  Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

This matter comes before the court pursuant to defendant Hope Aree Pinkerton's January 26, 2006, Second Amended Motion To Vacate, Set Aside, Or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 74). In her motion, Pinkerton seeks relief from her sentence to 240 months of imprisonment on a charge of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, based on alleged ineffective assistance by her counsel. The parties have briefed the issues presented, and the court finds the motion ripe for disposition.

## I. INTRODUCTION

### A. Charges, Conviction, and Sentencing

In an Indictment handed down on August 21, 2003, defendant Pinkerton, having previously been convicted of a felony drug offense, was charged with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count 1) and to manufacture 5 grams or more of actual (pure) methamphetamine (Count 2), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 851. On February 19, 2004, the government filed its Notice of Intent to Seek Enhanced Penalties Pursuant to 21 U.S.C. § 851, based on the defendant's prior qualifying felony drug conviction for possession with intent to distribute a controlled substance, in Plymouth County, Iowa District Court, Case No. FECR007701 (Doc. No. 21). The Notice informed the defendant that if she was convicted of Count 1 of the Indictment, she faced a mandatory minimum sentence of twenty years of imprisonment without the possibility of parole.

Thereafter, on March 17, 2004, Pinkerton pleaded guilty to Count 1, pursuant to

a plea agreement, before United States Magistrate Judge Paul A. Zoss.[1] During the plea hearing, Pinkerton acknowledged that she understood she was facing a mandatory minimum sentence of twenty years. *Transcript of Plea Taking*, at 11 (Mar. 17, 2004). The written plea agreement was admitted as an exhibit during the plea hearing. *Id.* at 14-15. Pinkerton indicated, on the record, that she had personally read the entire agreement and consented to its terms by initialing each paragraph and signing the final page of the document. *Id.* at 15-16.

However, in order to ensure the defendant's understanding of her agreement, Judge Zoss proceeded to thoroughly review the important terms of the written agreement with Pinkerton, again, on the record. *Id.* at 16. Pinkerton again represented that she understood the mandatory minimum trumped any Guidelines sentence and that the minimum sentence she was facing as a result was 240 months, unless the government determined she had cooperated fully and provided substantial assistance. *Id.* at 20. Judge Zoss further cautioned Pinkerton that if she failed to cooperate with the government or used illegal substances, the chances of her receiving a sentence under 240 months would be greatly reduced and she would be "saddled" with twenty years or more, and there would be no way around the minimum sentence. *Id.* at 30.

Although ordinarily Pinkerton would have been taken into custody following the plea hearing, she was allowed to remain on pretrial release, pending sentencing, pursuant to the parties' stipulation that the potential of Pinkerton's active cooperation constituted special circumstances. Following the plea hearing, Judge Zoss issued a Report and Recommendation recommending acceptance of Pinkerton's guilty plea. On April 6, 2004, the undersigned accepted Judge Zoss's Report and Recommendation, to which no

---

[1]Both prior to and during the plea hearing, Pinkerton was represented by attorney Michael J. Frey.

objections had been filed. Unfortunately, on June 3, 2004, Pinkerton's pretrial release was revoked as a result of a positive test for methamphetamine, and the case proceeded to sentencing. The government did not file any motions for reduction of sentence based on substantial assistance. Accordingly, at a sentencing hearing on August 5, 2004, the undersigned sentenced Pinkerton to 240 months of imprisonment. Pinkerton did not file an appeal, and instead chose to file the current motion pending before the court.

## B. *The Motion To Vacate Sentence*

On January 18, 2005, Pinkerton filed a *pro se* Petition to Eliminate Enhancements and Reduce Sentence (Doc. No. 55). In its Initial Review Order, the court dismissed the pleading without prejudice and directed Pinkerton to resubmit her pleading on a form AO 243 under 28 U.S.C. § 2255. Pinkerton resubmitted her Motion To Vacate, Set Aside, Or Correct Sentence on August 11, 2005 (Doc. No. 61). Pinkerton did not submit a corresponding brief. Instead, she requested she be appointed counsel, or in the alternative, that the deadline for filing a supporting brief for her Motion To Vacate, Set Aside, Or Correct Sentence be extended (Doc. No. 63). On October 20, 2005, the court granted Pinkerton's request for counsel and extended the time in which Pinkerton had to file a supporting brief. (Doc. No. 64). Thereafter, attorney Jeffrey M. Lipman was appointed to Pinkerton's case. (Doc. No. 65). On December 1, 2005, Pinkerton filed a Motion for Extension of Time to File Amended Petition and File Habeas Brief (Doc. No. 68). The court granted this motion on December 5, 2005, and allowed Pinkerton until January 23, 2006 in which to file an amended motion (Doc. No. 69). On December 7, 2005, the court filed an Amended Briefing Schedule, which required the government to respond to Pinkerton's claims for relief on or before March 24, 2006, following the filing of Pinkerton's amended motion 28 U.S.C. § 2255 (Doc. No. 70). On January 13, 2006,

Pinkerton filed an amended Petition for Writ of Habeas Corpus (Motion Under 28 U.S.C. § 2255 To Set Aside, Vacate, Or Correct Sentence). (Doc. No. 71). Counsel for Pinkerton again requested an Extension of Time to File Brief in Support on January 19, 2006. (Doc. No. 72). This motion was granted on January 20, 2006. (Doc. No. 73). However, prior to filing a brief, on January 26, 2006, Pinkerton filed a Motion for Leave to File Second Amended Petition. (Doc. No. 74). This motion was also granted. In Pinkerton's Second Amended Motion Under 28 U.S.C. § 2255, as it appears in its final form, Pinkerton asserted the following grounds for relief: (1) that her counsel was ineffective in preparing her for her guilty plea and that, as a result, her guilty plea was not made knowingly and voluntarily; (2) that her counsel was ineffective in representing to the prosecutor that Pinkerton was dishonest in her debriefings and that, as a result, an irreconcilable conflict of interest was created. On February 8, 2006, Pinkerton filed a brief in support of her second amended motion under 28 U.S.C. § 2255. (Doc. No. 75). The government requested an extension of time to file a response to Pinkerton's second amended motion on March 24, 2006 (Doc. No. 76). The court granted the government's motion on this same date. On April 24, 2006, the government filed its response (Doc. No. 78). Pinkerton did not file a reply. As the issue is now fully submitted, the court will consider the merits of Pinkerton's claim of ineffective assistance of counsel after considering the standards applicable to her § 2255 motion.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

### 1. Relief on the merits of the claims

The court must first consider the standards applicable to a motion for relief from sentence pursuant to 28 U.S.C. § 2255. Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

6

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies

the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

## 2.    *Entitlement to an evidentiary hearing*

As the Eighth Circuit Court of Appeals recently explained,

> A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. We review the district court's decision not to hold an evidentiary hearing for an abuse of discretion. *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001). "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." *Id.* Therefore, in order to determine if [a movant under § 2255] is entitled to remand for an evidentiary hearing, we must consider the validity of his [claim for § 2255 relief]. *Id.*

*United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005). More specifically, "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of

fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted). "In some cases, the clarity of the existing record on appeal makes an evidentiary hearing unnecessary, [but] [a]bsent such clarity, an evidentiary hearing is required." *Latorre v. United States*, 193 F.3d 1035, 1038 (8th Cir. 1999). At the evidentiary hearing, if one is required, the defendant must establish that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623; *accord Latorre*, 193 F.3d at 1038 (quoting this standard from *Bousley*).

In this case, the court concludes that no evidentiary hearing is required on any issue, because the record "conclusively show[s] that [Pinkerton] is entitled to no relief" on any of her "ineffective assistance" claims, as the court will explain in more detail below. 28 U.S.C. § 2255; *Ledezma-Rodriguez*, 423 F.3d at 835-36.

## B. *Ineffective Assistance Of Counsel*

The claims on which the court permitted Pinkerton's motion for § 2255 relief to proceed are based on the alleged ineffective assistance of her counsel before and during sentencing pursuant to her guilty plea. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." *U.S. Const. amend.* VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the

Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Pinkerton is entitled to relief on her § 2255 motion turns on whether or not she can satisfy the standards applicable to her "ineffective assistance" claims.

### 1. *Applicable standards*

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating

that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v.*

*Norris*, 103 F.3d 710 (8th Cir. 1997).

### 2. The "ineffective assistance" at issue here

### a. Failure to prepare Pinkerton for her guilty plea

Pinkerton alleges, first, that her counsel was ineffective in preparing her for her guilty plea and that, as a result, her guilty plea was not knowing and voluntary. In support of this contention, Pinkerton contends that she did not understand the consequences of the plea agreement, and that counsel did not explain the ramifications of the plea, including the fact that she was facing a 240 month mandatory minimum term of incarceration. She contends, among other things, that counsel acted deficiently in appearing at the plea hearing twenty minutes late and failing to advise her on the effect of her plea and the mandatory minimum sentence. The government contends that the record, including Pinkerton's plea colloquy, as well as her initials throughout the plea agreement and her signature on the final page of the document, demonstrate that she was fully advised of the consequences of her guilty plea.

Without doubt, to be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent, and because a guilty plea constitutes a waiver of various constitutional rights, it must be made with sufficient awareness of relevant circumstances and likely consequences. *See, e.g., United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999). The Eighth Circuit Court of Appeals has recognized that a plea agreement may not be knowing and voluntary when it is the result of the ineffective assistance of counsel. *See DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000). At the same time, a defendant's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of verity. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997). Moreover, allegations that counsel misled a defendant into accepting a plea agreement by misleading the defendant about the likely sentence are

insufficient to justify withdrawal of the defendant's guilty plea as involuntary, where the court informed the defendant of the maximum possible sentence. *See United States v. Granados*, 168 F.3d 343, 345 (8th Cir. 1999) (*per curiam*) (the defendant's reliance on an attorney's mistaken impression about the possible length of sentence was insufficient to render a plea involuntary as long as the court informed the defendant of the maximum possible sentence).

The record plainly does not support Pinkerton's claim that counsel's ineffective assistance led to an involuntary plea. At the outset, it behooves the court to note that the record completely refutes Pinkerton's contention that her counsel arrived twenty minutes late to the plea hearing. The plea transcript indicates the hearing started at 11:04 a.m., a mere four minutes after the scheduled start time of 11:00 a.m. (Doc. No. 34). Moreover, counsel was not ineffective or deficient in failing to advise Pinkerton of the possible length of her sentence, *see Rice*, 449 F.3d at 897 (the claimant must first show that counsel's performance was constitutionally deficient), because Pinkerton initialed and signed the written plea agreement, dated March 1, 2004, which clearly advised that she was facing a mandatory minimum sentence of twenty years in Paragraph 1. *See* Government's Exhibit 1. At her plea hearing, Pinkerton verified, on the record, that she had read the document and indicated her acceptance to its terms by initialing each paragraph and placing her signature at the end of the document.

Furthermore, Pinkerton averred at her plea-taking that her plea was voluntary and reaffirmed the truthfulness of all stipulations in her plea agreement. *See Nguyen*, 114 F.3d at 703 (representations by a defendant at a plea-taking carry a strong presumption of verity). Finally, even supposing that Pinkerton was inadequately advised by counsel about the possible length of her sentence or other factors that might impact her sentence, such as the likelihood that she would obtain a substantial assistance motion, the court cannot

find that Pinkerton was prejudiced. *See Ledezma-Rodriguez*, 423 F.3d at 836 (even if counsel's performance was deficient, the defendant must still prove prejudice). Pinkerton was properly advised by the court, on more than one occasion, that unless she cooperated with the government and provided substantial assistance, she was facing a twenty year mandatory minimum sentence. *See Granados*, 168 F.3d at 345 (the defendant's reliance on an attorney's mistaken impression about the possible length of sentence was insufficient to render a plea involuntary as long as the court informed the defendant of the maximum possible sentence).

Therefore, Pinkerton is entitled to no evidentiary hearing and no relief on this claim of ineffective assistance of counsel.

### b.    *Conflict of interest*

Next, Pinkerton contends that her counsel was ineffective in representing to the government, in the form of a letter, that she had not been completely forthright with investigators. Pinkerton clearly cannot show either "deficient performance" or "prejudice" necessary to sustain this claim. *See Ledezma-Rodriguez*, 423 F.3d at 836 (an ineffective assistance claim requires proof of both "deficient performance" and "prejudice"). In order to understand the court's conclusion, it is necessary to put into context the circumstances that gave rise to the challenged letter. Initially, Pinkerton was allowed to remain out of custody on pretrial release, following the entrance of her guilty plea, in order to allow her to actively cooperate with the government investigators. Unfortunately, due to her own actions, Pinkerton's pretrial release was revoked after she tested positive for methamphetamine use. Her detention effectively concluded any hope of "active" cooperation with the government and deflated her chance to receive a substantial assistance motion. In light of this, her attorney, according to his sworn affidavit, met with Pinkerton to discuss the possibility of her receiving a substantial

assistance motion, despite the fact she was no longer able to actively cooperate. At that time, Pinkerton implied to attorney Frey that she had not completely disclosed all of the information to which she was privy. Pinkerton then indicated to her counsel she desired another opportunity to provide information to the government, in the hopes of securing a substantial assistance motion, and requested that the government be so advised. Pursuant to Pinkerton's request, her counsel wrote the following letter, dated July 1, 2003, to the U.S. Attorney handling the case:

> Dear Mr. Wehde:
> I had the sentencing hearing in the above case rescheduled to August 5, 2004 in the hopes that I could convince you to send some law enforcement investigators to debrief Hope Pinkerton one last time in order for her to fully disclose all the information that she might have with respect to her involvement in illegal drug activities. I have reason to believe she has not been completely forthright with investigators. Given the fact that she is looking at a 240-month sentence, I am sincerely requesting that your office try one last time to help Hope "help herself."

Government's Exhibit 2, at 1. Nowhere in her brief does Pinkerton dispute the facts asserted in attorney Frey's affidavit. Rather, she simply contends that the fact her counsel wrote the previously quoted letter "created a severe breach of and irreconcilable conflict of interest between counsel and Pinkerton" *see Defendant's Brief*, at 12, because Pinkerton construes the letter as calling into question her veracity and trustworthiness. Although she had an opportunity to file a reply brief, in which she could have contested attorney Frey's rendition of the facts, or supplied an affidavit of her own, she failed to do so. Thus, at least to this court, it appears that Pinkerton is simply upset with the wording of the letter, but does not contest the factual background out of which the letter arose. Based on the context of the letter, it is clear that attorney Frey made a strategic choice and

decided that Pinkerton's best chance for obtaining a substantial assistance motion was to have her fully debrief to the government investigators.  As mentioned elsewhere in this opinion,  "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"  *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690).  That strategy motivated attorney Frey's letter is particularly obvious in light of the fact that following revocation of her pretrial release, Pinkerton no longer had the opportunity to actively cooperate with the government.  Therefore, the hope of a substantial assistance motion rested solely on the quality and nature of the information she could provide to the government through debriefing.  Attorney Frey sent the challenged letter in the hopes that Pinkerton would receive a second chance in order to provide information to the government.  Prior to the receipt of the letter, the government had not received any active assistance from the defendant and the government was under no further obligation to debrief Pinkerton.  The letter authored by attorney Frey was an attempt to assist his client in securing a reduced sentence even though it was very late in her case.  Thus, once put into context, it is clear attorney Frey did not breach an essential duty to his client.  Rather, at all relevant times, the actions taken by attorney Frey were undoubtedly calculated to be in Pinkerton's best interest, and are therefore, unassailable.

Furthermore, based on the uncontroverted evidence in the record, it is clear that attorney Frey was acting in accordance with his client's expressed wishes.  Because counsel was acting at Pinkerton's request, he did not breach an essential duty by carrying out his client's wishes, particularly in light of the fact those wishes coincided with Pinkerton's best interests.  Although Pinkerton contends the letter called into question her trustworthiness, attorney Frey simply indicated he had reason to believe she had not been entirely "forthright."  Read carefully, attorney Frey's letter does *not*, as Pinkerton contends, comment on her veracity with respect to the information she had already

provided the government. Rather, "forthright," means "direct and without evasion." *See The American Heritage College Dictionary* 536 (3d ed. 1997). Thus, his letter, as it is written, does no more than to simply imply that Pinkerton, like many defendants, had not initially disclosed all of the information to which she was privy, and consequently, did not create the conflict of interest alleged by Pinkerton.

Further, even if there had been a breach of an essential duty, Pinkerton would still be required to show prejudice. *See Ledezma-Rodriguez*, 423 F.3d at 836 (even if counsel's performance was deficient, the defendant must still prove prejudice). This, she cannot do, because she cannot demonstrate that but for counsel's ineffective assistance, the outcome of her proceeding would have been different. Stated differently, Pinkerton cannot show that but for attorney Frey's letter, the government would have filed a substantial assistance motion. This is so, because the inferences derived from the record demonstrate otherwise. First, initially, the defendant did not want to plead guilty to the charges. It wasn't until after the government filed the 851 enhancement that Pinkerton even made the decision to cooperate. Once this decision was made and her plea was entered, Pinkerton was provided an opportunity to actively cooperate with the government. Unfortunately, Pinkerton chose to violate the terms of her pretrial release by using methamphetamine. As a result, her pretrial release was revoked and she was subsequently detained, thereby precluding any further active cooperation. Prior to her detention, she had not provided the government with any active service. It was not until after she was detained that attorney Frey drafted and sent the challenged letter. By the time the letter was sent, however, the damage had already been done to Pinkerton's hopes of a substantial assistance motion. Based on the defendant's own actions and decisions, all of which preceded attorney Frey's letter, it is highly doubtful, and indeed, even improbable that the government would have filed a substantial assistance motion but for attorney Frey's letter. To the contrary, the record

reveals that at that time, Pinkerton had done very little to assist the government and had been an unwilling cooperator. Thus, it is highly doubtful that attorney Frey's letter revealed any facts to the government of which they weren't already aware. This conclusion is bolstered by the fact that during Pinkerton's sentencing, when asked about a substantial assistance motion, the government represented that there had been a variety of difficulties in the case, many of which were with Pinkerton's unwillingness to cooperate at the *early stages* of her case, but that they had not given up on being able to use her information, particularly in light of her recent willingness to cooperate. Thus, there is not one scintilla of evidence in the record that indicates the government would have filed a substantial assistance motion but for attorney Frey's letter. Accordingly, Pinkerton cannot show prejudice on this claim.

Because Pinkerton can show neither breach of an essential duty, nor prejudice, she is not entitled to either an evidentiary hearing or any relief on this claim.

### C. Certificate Of Appealability

Defendant Pinkerton must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir.), *cert. denied*, 531 U.S. 908 (2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir.), *cert. denied*, 525 U.S. 1007 (1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998), *cert. denied*, 525 U.S. 1166 (1999); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court

reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The court determines that Pinkerton's petition does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c).  *See* 28 U.S.C. § 2253(c)(2); *Fed. R. App. P.* 22(b).  Accordingly, with respect to Pinkerton's claims, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

## III.  CONCLUSION

Upon the foregoing, Hope Aree Pinkerton's second amended Motion To Vacate, Set Aside, Or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. Nos. 74, 75) is **denied in its entirety.**

**IT IS SO ORDERED.**

**DATED** this 11th day of August, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA